## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:21-cr-172 (JAM) |
| DARNELL MACON, SR. and KHARISMA BROOKS, *Defendants*. | |

### ORDER DENYING MOTIONS FOR JUDGMENT
### OF ACQUITTAL AND FOR NEW TRIAL

The defendants Darnell Macon, Sr., and Kharisma Brooks have moved for judgment of

acquittal and for a new trial. I will deny their motions because the evidence was sufficient to

support the jury verdicts against them and because they have failed to show any error at trial that

would warrant the grant of a new trial.

### BACKGROUND

On April 20, 2022, a federal grand jury returned a second superseding indictment.[1]

Count One of the indictment charged Macon under 18 U.S.C. § 922(g) with knowing possession

of a firearm by a person previously convicted of a felony crime. The indictment charged Macon

with knowingly possessing both a Smith & Wesson and a Taurus Judge firearm for about a two-

week period from May 25 to June 7, 2021. Count Two of the indictment charged Brooks under

18 U.S.C. § 2 with aiding and abetting Macon's unlawful possession of these two firearms.

In addition, Count Three of the indictment charged Brooks under 18 U.S.C. § 922(a)(6)

with knowingly making a false statement on May 27, 2021 to a federal firearms dealer, and it

further charged Macon in turn with aiding and abetting Brooks's making of a false statement to

---

[1] Doc. #96.

1

the firearms dealer. In essence, this count alleged that Brooks and Macon engaged in a "straw purchase" transaction for Brooks to buy the Smith & Wesson firearm on Macon's behalf.

The case proceeded to a jury trial, and the jury rendered a split verdict. It found both Macon and Brooks guilty of the felon-in-possession charges alleged in Counts One and Two but acquitted them on the false-statement charge alleged in Count Three.[2]

I will now describe the trial evidence that is most relevant to the felon-in-possession charges for which the jury returned guilty verdicts. As an initial matter, the parties stipulated at trial that Macon was a previously convicted felon and that both Macon and Brooks knew that he had previously been convicted of a felony.[3] The parties also stipulated to facts to show that both firearms charged in the indictment had previously traveled in interstate commerce.[4]

Although the indictment charged Macon with knowingly possessing two firearms, I instructed the jury without objection that it could return a verdict of guilty if it found that Macon possessed either one of the two firearms.[5] Accordingly, for purposes of my review of the sufficiency of the evidence in this case, I need only consider if the evidence was enough to sustain the convictions as to one of the two firearms, and here my discussion will focus on the Smith & Wesson firearm that was the subject of most of the evidence presented at trial.

The investigation of Macon and Brooks began when the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received a report of suspicious activity from a

---

[2] Doc. #213.
[3] Court Exhibit ("Cx") 2; Trial Transcript ("Tr.") 314–15. The four days of trial transcripts are posted to the docket at Docs. #223–#226. The Court pre-trial conference with counsel following jury selection is posted to the docket as Doc. #222.
[4] Cx1; Tr. 624–25.
[5] Doc. #212 at 8.

federal firearms dealer.[6] The dealer was Christopher Rehnberg, and he owned a firearms store

known as the "Last Redoubt" in Kent, Connecticut.[7]

Rehnberg called the ATF to report a possible "straw purchase" transaction involving

Brooks's purchase of a Smith & Wesson firearm on behalf of Macon when the two of them

visited Rehnberg's store together on May 27, 2021.[8] A "straw purchase" occurs when one

person—a proverbial "straw" man—buys a firearm for another person such as a convicted felon

like Macon who is barred by law from buying or possessing a firearm.

The key evidence at trial was the store's surveillance video which was introduced by the

prosecution without objection at trial.[9] The jury watched the video while Rehnberg testified at

length about the visit by Macon and Brooks to his store. The video shows that Macon and

Brooks spent about an hour at the store while Rehnberg conversed with them and showed them a

wide variety of firearms for sale. The visit culminated in the purchase by Brooks of the Smith &

Wesson firearm that is identified in the indictment.

As relevant to the felon-in-possession charge against Macon, the video clearly and

unmistakably shows Macon picking up the Smith & Wesson firearm from a display cabinet and

then holding it for more than two minutes before handing it to Brooks.[10] The video also shows

Macon later picking up and briefly holding the Smith & Wesson firearm at least two more times

during the course of the visit.[11] The video then shows Brooks standing at the store counter to buy

the Smith & Wesson firearm from Rehnberg but doing so by using Macon's credit card that

Macon handed her.[12] Similarly, the video shows Macon picking up a box of .40 caliber

---

[6] Tr. 149–50, 162–63, 290, 319–20.
[7] *Id.* at 79.
[8] *Id.* at 149–150.
[9] Govt. Exhibit ("Gx") 8A, Gx8B, Gx8C (video excerpts); Tr. 113–16.
[10] Tr. 117–18; Gx8A (12:32:06–12:34:19).
[11] Tr. 121, 123; Gx8A (12:44:42–12:45:10; 12:51:52–12:52:08).
[12] Tr. 132, 137–38; Gx8A (13:31:09); *see also* Gx4 (credit card record in Macon's name).

ammunition consistent with the Smith & Wesson firearm and then giving cash to Brooks to pay for the ammunition.[13] The end of the video shows Macon holding a box with the Smith & Wesson firearm inside and then walking out of the store holding a bag containing the box after the sale was completed.[14]

In addition to the lengthy video, the prosecution introduced several still-shot photographs that were derived from the video. As shown below, one of the photographs depicts Macon holding the Smith & Wesson firearm that was charged in the indictment:[15]



---

[13] Tr. 128–31, 135, 138; Gx8A (13:17:45–13:19:21, 13:20:50–13:20:55); Gx8B (13:17:45–13:18:07, 13:26:54–13:27:20); Gx8C (13:18:18–13:18:53, 13:38:13–13:39:31).
[14] Tr. 136, 252–53; Gx8C (13:43:33–13:45:25).
[15] Tr. 145–46; Gx9.

Other photographs show Macon holding a phone in his hand while looking at store merchandise, passing his credit card for Brooks to buy the Smith & Wesson firearm, passing cash to Brooks for her to buy ammunition, and then leaving the store while holding the bag with the Smith & Wesson firearm inside.[16]

Six more photographs show Macon holding other firearms that were on display at the store.[17] Two of these photos are reproduced below:



---

[16] Tr. 147: Gx16–Gx19.
[17] Tr. 146–47; Gx10–Gx15.



Apart from this evidence of Macon and Brooks's visit to Rehnberg's store, the trial evidence showed that Brooks had only recently acquired a firearms permit two days before.[18] On that same day, she and Macon went to another firearms store in Stratford, Connecticut where she purchased the Taurus Judge firearm that was also charged in the indictment.[19]

Upon learning of both the Smith & Wesson and Taurus Judge transactions, the ATF decided to investigate by going with the local police on June 7, 2021 to an apartment in Danbury, Connecticut where Macon and Brooks lived.[20] While outside the apartment complex, the ATF

---

[18] Tr. 324.
[19] *Id.* at 325, 550, 559; Gx24 (firearms transfer record); Gx29A–Gx29D (store surveillance video).
[20] Tr. 332, 475–76.

agents saw Macon and Brooks arrive together in a car and saw Brooks go inside the apartment.[21] The ATF agents knocked on the door, engaged Brooks in conversation, and Brooks told them she had bought two firearms.[22] After the agents asked her to see the firearms, she led them inside the apartment but could not find them after searching closets in an upstairs bedroom and the kitchen.[23]

At this point, Macon was still outside the apartment in the parking lot talking with local police, and Brooks came outside to ask Macon where the guns were.[24] Macon then went inside the apartment with the two ATF agents, and he retrieved both firearms from his closet in an upstairs bedroom that he shared with Brooks.[25] Macon subsequently admitted that he had possessed and that he had fired both the Smith & Wesson and Taurus Judge firearms:

Q. Did he tell you that he [Macon] possessed those firearms?

A. He did.

Q. Did he tell you that he fired those firearms?

A. He did.[26]

And Macon told the agents that he knew as a convicted felon that he was not allowed to possess a firearm.[27]

---

[21] *Id.* at 333–34.

[22] *Id.* at 336–37, 477.

[23] *Id.* at 337–42, 426–28, 478–81, 540–43. Prior to trial the defendants moved to suppress on the ground that neither Brooks nor Macon consented to the agents' entry of the apartment. I conducted an evidentiary hearing and denied the defendants' motion, concluding that they voluntarily consented to their entry. *See United States v. Macon*, 2022 WL 4721871 (D. Conn. 2022).

[24] Tr. 343–44, 392–93.

[25] *Id.* at 343–47, 362, 428–29, 450, 482–83, 543–44.

[26] *Id.* at 442 (testimony of Special Agent Barrett Hyde); *see also id.* at 357, 361, 365.

[27] *Id.* at 356, 365.

DISCUSSION

I will first address the defendants' motions for judgment of acquittal before addressing their motions for a new trial.

### *Motions for judgment of acquittal*

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering such a challenge, I must review the evidence in the light most favorable to the government, and I must give full play to the right of the jury to determine credibility, to weigh the evidence, and to draw justifiable inferences of fact. *See United States v. Landesman*, 17 F.4th 298, 319-20 (2d Cir. 2021). The evidence must be viewed in its totality, and the government need not negate every theory of innocence. *Id.* at 319. All in all, the jury's verdict must be upheld "if *any* rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt." *Ibid.*[28]

In order for the jury to return a verdict against Macon on the felon-in-possession charge, the jury was instructed it must find beyond a reasonable doubt the following three elements: (1) that Macon knowingly possessed at least one of the firearms charged in the indictment, (2) that Macon knew that he had previously been convicted of a felony offense, and (3) that the firearm had previously traveled in interstate commerce.[29] As noted above, Macon stipulated that he had previously been convicted of a felony crime, that he knew he had been previously convicted of a

---

[28] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[29] Doc. #212 at 7; *see also Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *United States v. Estevez*, 961 F.3d 519, 527 (2d Cir. 2020).

8

felony crime, and to facts showing that the firearms had previously traveled in interstate commerce.

As to the only disputed element—whether Macon knowingly possessed the firearm—the jury watched a video showing Macon repeatedly pick up and hold the Smith & Wesson firearm while he was at Rehnberg's gun store. This video evidence alone was obviously enough by itself for any reasonable jury to conclude that he knowingly possessed a firearm. "Actual possession requires a showing that the 'defendant physically possessed the firearm.'" *United States v. Lewis*, 62 F.4th 733, 745 (2d Cir. 2023) (quoting *United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002)). "Possession may or may not be brief," and "[i]n considering an allegation that a single offense of possession was committed during a specified time period, the jury may properly return a verdict of guilty if it finds unanimously that the defendant possessed the firearm *at any point* during that period." *United States v. Estevez*, 961 F.3d 519, 528 (2d Cir. 2020) (emphasis added).

The video and accompanying records and testimony also established that Macon financed the purchase of the Smith & Wesson firearm with his credit card, that he furnished cash to purchase ammunition for the Smith & Wesson firearm, and that after the purchase he carried the Smith & Wesson firearm in a bag out of the store. The jury also heard testimony that when the ATF agents went to Macon's house to inquire about the firearms, Macon went inside the house and retrieved both firearms from his bedroom closet. Macon then admitted that that he had possessed and fired both firearms.

It is baffling how Macon could contend that the evidence was somehow not legally sufficient for the jury to convict him. The arguments he makes are frivolous. He argues, for example, that "[t]he government failed to prove that Mr. Macon held or carried a charged firearm

outside of the controlled environment of [the] Last Redoubt."[30] This argument not only wholly ignores the evidence from the ATF agents' visit to Macon's home (when Macon handed the agents the two firearms and admitted that he had possessed and fired them) but also absurdly presupposes that there is some "controlled environment of a firearms store" exception to the federal law that bars convicted felons from possessing a firearm. It posits—without citing any reason or precedent—that when Congress decided to bar felons from possessing firearms, Congress intended an unwritten exception to allow felons to visit gun shops to handle and play with as many guns as they wish.

Macon also argues that he "did not have control of the firearm" when he was at Rehnberg's gun shop.[31] This is another argument that is not just wrong but outright frivolous. The gun shop video conclusively shows Macon's sole possession and control of the Smith & Wesson firearm at multiple points leading up to when he eventually left the store carrying a bag with the Smith & Wesson firearm inside. Only by ignoring the evidence and disregarding the law that requires a court to view the evidence in the light most favorable to the jury's verdict can Macon argue that the evidence was not legally sufficient to sustain his conviction.

Brooks raises a separate challenge to the sufficiency of the evidence against her. In order for the jury to convict Brooks, it had to find that Macon was guilty and that Brooks aided and abetted his unlawful possession of the firearm.[32] More specifically, it had to find that Brooks knew that Macon was unlawfully possessing a firearm and that she was not merely present but

---

[30] Doc. #229 at 1.
[31] Doc. #233 at 1.
[32] Doc. #212 at 10–12 (final jury instructions).

affirmatively took some action with an intent to assist Macon in unlawfully possessing a firearm.[33]

As noted above, Brooks stipulated that she knew Macon was a felon and that he was barred by law from possessing a firearm. There were numerous telltale signs from the video at Rehnberg's gun shop that would have allowed the jury to conclude that when she bought the Smith & Wesson firearm she knew and intended that Macon would unlawfully possess it. She was there in the shop when Macon first picked up the Smith & Wesson firearm from the display window and held it for more than two minutes before giving it to her. She bought the firearm using a credit card in Macon's name and that Macon gave her, and she used cash from Macon to buy ammunition for the Smith & Wesson firearm. And despite buying the Smith & Wesson firearm in her name, she let Macon walk out of the store with it.

Then when the ATF later came to her house, Brooks had no idea where the Smith & Wesson or Taurus Judge firearms were. And so she called on Macon to ask where they were—an action strongly suggestive that she knew that Macon had possessed the two firearms. Why else would she think he knew where the firearms were?

Brooks's insistence that she herself had a lawful right to purchase and possess firearms was no defense to the charge, because these rights did not mean that she was free to share possession of a firearm with a known convicted felon like Macon. The jury was instructed without objection that "[o]ne may possess an object without owning or having legal title of the object" and that "one may jointly possess an object with another person," and that "[t]he law

---

[33] *Id.* at 11–12. The jury was told that Brooks had no duty to prevent Macon from possessing a firearm and that she could be convicted only if "she took some action with an intent to assist Mr. Macon in unlawfully possessing one or both of the firearms at issue." *Ibid.*

treats joint possession the same as sole possession."[34] So even if the jury fully credited Brooks's rights to purchase and possess firearms for herself, the jury had plenty of evidence to conclude that Brooks also acted with the intent to assist Macon's unlawful possession of firearms.

In short, the evidence was legally sufficient to sustain the convictions of both Macon and Brooks. Accordingly, I will deny their motions for judgment of acquittal.

### *Motions for new trial*

Rule 33 of the Federal Rules of Criminal Procedure allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The "ultimate test" for a Rule 33 motion is "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018).

#### *Photographs of Macon's possession of uncharged firearms*

Macon moves for a new trial on the ground that he was prejudiced by the introduction of the still-shot photographs that were derived from the video at Rehnberg's gun store. All of these photographs were taken from the store's video which itself was admitted without objection at trial.[35]

---

[34] Doc. #212 at 7–8. The jury was also issued standard instructions concerning actual and constructive possession of a firearm. *Id.* at 7.

[35] Gx8A–Gx8C (video); Tr. 113–16 (video admitted without objection at trial).

On the day before trial, Macon objected to the photographs on grounds that they were cumulative of the video.[36] I overruled this cumulativeness objection because there was no claim that the photographs were not accurate depictions of what was shown on the video and because it is common practice for parties to introduce still-shot photographs from a video.[37]

Macon renewed his objection at trial: "This is a similar objection to what I made yesterday that this is cumulative, it's not the best evidence. We've been viewing the best evidence. It's highly prejudicial and rather inflammatory."[38] I overruled the objection again on the same grounds, concluding in part that there was "a probative value that's not substantially outweighed by unfair prejudice."[39]

Macon now argues that these rulings were error. I do not agree. A still-shot photograph from a video can be helpful to emphasize and focus on what a video shows at a specific time. Indeed, a video itself can always be stopped or paused to focus on a particular frame. It is hard to understand why a party should not be permitted to direct the jury to particular frames of a video and then to make it easier for the jury to identify what is shown in particular frames by means of creating and introducing still-shot photographs of particular video frames.

Rule 403 of the Federal Rules of Evidence does not bar all cumulative evidence but only *needlessly* cumulative evidence. It says that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[36] As Macon's motion notes, "[d]efense counsel first objected to the intended use of images of Mr. Macon handling firearms during the charge conference and motions hearing on October 25, 2022." Doc. #230 at 4. The transcript of this hearing makes clear that defense counsel sought to exclude the photographs as cumulative of the video. Doc. #222 at 74–75 (Macon's counsel argument that "we also have the full video" and "so I don't believe that they should be able to introduce in their case in chief the photos when we have the videos available that give the full context").
[37] Doc. #222 at 76–77; Tr. 10–14.
[38] Tr. 141.
[39] *Id.* at 143; *see also id.* at 151–52 (noting that the Court had overruled objections that the photographs were "duplicative and cumulative of the video" and that "I ordinarily do allow still shots of videos" and that "the defense is free if they wish to use any still shots they'd like to from the video evidence that's been produced, introduced into evidence, or otherwise produced to the defense").

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or *needlessly presenting cumulative evidence*." Fed. R. Evid. 403 (emphasis added). The still-shot photographs in this case were not needlessly cumulative. They were helpful to focus the jury on particular moments of significance in the video.

Macon does not cite any precedent ruling that it is improperly cumulative for a party to introduce a still-shot photograph that is derived from a video that has been admitted at trial. In fact, multiple courts have rejected such arguments. *See Wilson v. Sirmons*, 536 F.3d 1064, 1116–17 (10th Cir. 2008), *opinion reinstated sub nom. Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc), *overruled on other grounds by Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013); *United States v. Serrano-Ramirez*, 2018 WL 4220760, at *3 (M.D. Tenn. 2018); *Rhodes v. Sec'y, Dep't of Corr.*, 2010 WL 3819358, at *67 (M.D. Fla. 2010); *cf. Hernandez v. Jones*, 556 F. App'x 672, 674 (10th Cir. 2014) (crime-scene video not cumulative of crime-scene photographs); *United States v. Bowers*, 2023 WL 3688250, at *2–3 (W.D. Pa. 2023) (same).

Beyond the issue of cumulativeness, Macon objects that some of the still-shot photographs showed him handling several other firearms besides the Smith & Wesson firearm that was charged in the indictment. But the first thing to say about this objection is that Macon— despite being represented by three attorneys at trial—never raised it before the photographs were admitted at trial.[40] His objection to the photographs were that they were cumulative (and not the "best evidence"), not that they showed him unlawfully possessing firearms other than those charged against him in the indictment.[41]

---

[40] Prior to trial Macon filed a "Motion *In Limine* to Preclude Introduction of Prior Misconduct Evidence." Doc. #176 (capitalization altered). The focus of this motion was on whether the prosecution could call as a witness Macon's parole officer, and there was no objection in this motion to the prosecution's introduction of the video and photographs showing Macon's possession of firearms other than those charged in the indictment.
[41] Tr. 141 (Macon's counsel objecting to the photographs at trial as "cumulative," "not the best evidence," and "highly prejudicial and rather inflammatory"); *see also* Doc. #222 at 75 (Macon's counsel objecting to the photographs at the pre-trial conference as "cumulative" and "inflammatory").

14

Indeed, Macon never objected at all to the underlying video which showed the very same thing as the photographs—that while he was at Rehnberg's gun store he took possession of multiple firearms that were not charged against him in the indictment. If Macon's objection to the photographs were that they showed him handling firearms not charged in the indictment, then he surely would have raised the same objection to the video.

The Federal Rules of Evidence understandably discourage courts from admitting evidence that a defendant has engaged in other crimes that have not been charged against the defendant. As noted above, Rule 403 bars the admission of evidence that creates a danger of unfair prejudice that substantially outweighs the probative value of the evidence. And Rule 404(b) further provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

"Character evidence is sometimes referred to as 'propensity evidence,' signaling the potential for a juror to draw a shorthand connection between the presumed character trait of an individual and the assumption that person will therefore 'act a certain way' as the basis of a prosecution." Anna Offit, *The Character of Jury Exclusion*, 106 MINN. L. REV. 2173, 2176 (2022). So, for example, if a defendant is charged with robbing a bank, the prosecution is not ordinarily free to introduce evidence that the defendant had robbed three banks before—for fear that the jury will assume that the defendant is guilty simply because of his character or propensity to rob banks.

But Rule 404(b) has exceptions. It says that evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

404(b)(2). So, for the bank robbery example, the prosecution might be allowed to introduce evidence of other uncharged bank robberies if these uncharged robberies shed light on the identity or *modus operandi* of the defendant as the one who engaged in the charged bank robbery. *See, e.g.*, *United States v. Carlton*, 534 F.3d 97, 101–02 (2d Cir. 2008).

More generally, the Second Circuit follows what it calls an "inclusionary approach" to allow the admission of "all 'other act' evidence that does not serve the *sole* purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Graham*, 51 F.4th 67, 82 (2d Cir. 2022) (emphasis added). The inclusionary approach is plenty controversial because it is needlessly overbroad.[42] But it's still the long and unquestioned boilerplate law of the Second Circuit. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978) ( "We have long been committed to the 'inclusionary' approach to 'other crimes' evidence, that is, that evidence of similar criminal acts is admissible if it 'is substantially relevant for some other purpose than to show a probability that (the defendant) committed the crime on trial because he is a man of criminal character.'") (quoting MCCORMICK, *EVIDENCE* § 190, at 447 (2d ed. 1972)).

Had Macon timely raised an "uncharged crimes" objection to the admission of those portions of the video and the particular photographs that showed him possessing uncharged firearms, the prosecution would have had substantial grounds to argue that the evidence of how he held, inspected, and even took aim with some of the other firearms at the gun store was highly

---

[42] *See* Daniel J. Capra & Liesa L. Richter, *Character Assassination: Amending Federal Rule of Evidence 404(b) to Protect Criminal Defendants*, 118 COLUM. L. REV. 769 (2018) (generally arguing for reform of Rule 404(b) evidence to follow an exclusionary rather than inclusionary approach); *see also* Hillel J. Bavli, *Character Evidence as a Conduit for Implicit Bias*, 56 U.C. DAVIS L. REV. 1019, 1025–26 (2023) (arguing "that when a court admits character evidence through exceptions, it invites jurors to rely on their prior beliefs and prejudices when determining a verdict, and that, consequently, judgments based on character evidence are inherently biased against certain groups of people based on their race, sex, appearance, accent, education, economic status, and other background characteristics").

probative of his intent to possess the Smith & Wesson firearm that was purchased that day in Brooks's name. Moreover, the prosecution might well have argued that such evidence was not subject at all to Rule 404(b) because the Second Circuit has recognized that "evidence of other crimes or acts can be admitted without reference to Rule 404(b) if that conduct 'arose out of the same transaction or series of transactions as the charged offense,' 'is inextricably intertwined with the evidence regarding the charged offense,' or 'is necessary to complete the story of the crime on trial.'" *United States v. Kemp*, 2023 WL 405763, at *5 (2d Cir. 2023) (quoting *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012)).

But the prosecution never had to make such arguments because there was never a proper objection that the video or photographs showed Macon engaged in uncharged crimes of possessing other firearms. Thus, for example, in *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019), the Second Circuit ruled that a defendant failed to preserve a Rule 404(b) objection to certain Facebook images showing him making gang signs by raising only a "general objection" based on their late disclosure rather "mak[ing] an objection clearly stating the impermissible-propensity-evidence grounds now asserted on appeal." *Id.* at 64.

It was not until *after* the video and photographs were already admitted that *sua sponte* I raised a concern with counsel about the possibility that the jury might make an improper propensity inference based on Macon's possession in the store of uncharged firearms.[43] I noted my surprise that none of the many defense attorneys had raised a Rule 404(b) objection to either the video or the photographs and that ordinarily such evidence of "multiple other crimes … would be subject to Rule 404(b) and the safeguards that Rule 404(b) has, which are not necessarily exclusion but at least limiting instructions [and] to make sure that the jury is not

---

[43] Tr. 152–56.

basically making a propensity inference."[44] I noted as well that—notwithstanding the failure of defense counsel to raise any Rule 404(b) objection—I would still be prepared "to have a protective instruction in the final jury instructions" or "other measures that are requested."[45]

At the end of the first trial day I revisited the issue of whether I should give a limiting instruction:

> I'd like the parties to think about the issue that I raised at the last break, which is whether the Court should enter an order or a limiting instruction, whether it's during trial, which I'd be open to if you want to propose that and certainly in the final jury instructions to guard against any risk that the jury's verdict could be based on Mr. Macon's possession of other firearms or ammunition that have not been charged in the case. Happy to hear from the parties with respect to that issue more. I know I truncated the discussion before. If there's anything else you want to put on the record about that issue, glad to hear from you about that now or later.[46]

I told defense counsel that "[i]f you do have a proposed limiting instruction, feel free to draft one and file it on the docket in terms of what your proposal would be. And then think about whether you want me to say something … during the trial itself and/or say something in the final jury instructions."[47]

Following the end of the first trial day I drafted and circulated to all counsel a proposed limiting instruction and then raised this issue again at the beginning of the second trial day:

> We had talked yesterday about the Court issuing a limiting instruction. I think the question had been made that I give a limiting instruction now and also in the final jury instructions with respect to the government's evidence on the video and the photographs from Mr. Rehnberg's store. I tried to draft something up this morning. I think we passed it out to all of you, I hope. I would invite your thoughts and comments on whether to give that instruction and, of course, any changes or modifications that should be made.[48]

---

[44] *Id.* at 153.
[45] *Id.* at 155.
[46] *Id.* at 212–13.
[47] *Id.* at 213.
[48] *Id.* at 222.

Counsel for both Macon and Brooks expressly *declined* my proposal to give a proposed limiting instruction to the jury at that time.[49]

On the third day of trial, I raised the issue once again in terms of what limiting instruction should be included within the final jury instructions to be read to the jury.[50] The prior evening I circulated a draft to counsel of the final jury instructions and that included the following proposed limiting instruction:

### EVIDENCE INTRODUCED FOR LIMITED PURPOSE

> To the extent that there was evidence at this trial of any firearms other than the two firearms manufactured by Smith & Wesson and Taurus that are the subject of the charges in this case and evidence of any ammunition, this evidence may be considered by you solely to decide if the prosecution has proved the charged crimes against Mr. Macon and Ms. Brooks. The prosecution has not charged Mr. Macon or Ms. Brooks with any other crimes, and you may not base your verdict on any belief that they engaged in any misconduct other than the specific charges at issue in this case.[51]

In the meantime, counsel for Macon proposed that same evening a longer limiting instruction that was based on the initial but longer limiting instruction that I had initially proposed be read to the jury during trial (but which—as noted above—was declined by defense counsel at the time).[52] I stated that I would now adopt Macon's proposed instruction in place of the shorter limiting instruction that I had proposed for the final jury instructions the night before.[53]

But then defense counsel changed their minds. Counsel for Macon stated that "defense counsel is in agreement that this is probably easier for you to just" read the shorter instruction

---

[49] *Ibid.; see also* Doc. #205 (text of proposed instruction and noting that defense counsel did not request "any limiting instruction at this time").
[50] Tr. 503.
[51] Doc. #212 at 16 (final jury instructions).
[52] Tr. 503–07.
[53] *Id.* at 507.

that I had proposed the night before.[54] Macon's counsel stated that "this may be easier than having to deal with the actual instruction that I provided to the Court last night."[55] I then verified with Macon's counsel that "you're withdrawing your request from last night" and "supporting what the Court proposed?"[56] Macon's counsel replied: "Yes, your Honor."[57]

Counsel for the government and Brooks likewise agreed to the Court's shorter proposed instruction.[58] And so I read this shorter proposed limiting instruction to the jury—just as it had been agreed to by all counsel.[59]

Yet despite the fact that Macon expressly agreed to the very instruction I gave, he now astonishingly argues that this instruction was not enough. He complains that "[t]he Court did not instruct the jury that they could not consider this evidence for the purpose of proving the defendants' character in order to show that on a particular occasion they acted in accordance with the character. *See* FED. R. EVID. 404(b)(1)."[60]

But Rule 30 of the Federal Rules of Criminal Procedure provides that "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Therefore, Macon's objection was waived—or at least forfeited— by his express agreement with the instruction I gave. *See United States v. Weintraub*, 273 F.3d 139, 146 (2d Cir. 2001) (claim of instructional error not preserved where the colloquy

---

[54] *Ibid.*
[55] *Id.* at 508.
[56] *Ibid.*
[57] *Ibid.*
[58] *Id.* at 508–09.
[59] *Id.* at 663; *see also id.* at 739 (all counsel stating that they had no objection to the final jury instructions as read by the Court). The government's opposition to Macon's motion for a new trial incorrectly asserts that "the Court adopted the language specifically requested by Macon," Doc. #232 at 7, when in fact the transcript shows that Macon, Brooks, and the government itself agreed to the shortened language proposed by the Court.
[60] Doc. #230 at 8.

between defense counsel and the district court "far from reasonably suggesting an objection of the sort [defendant] now advances, indicate counsel's acceptance of the instruction eventually given by the district court"); *cf. Williams*, 930 F.3d at 64-65 (defendant waived—not merely forfeited—claim that Rule 404(b) evidence was improperly omitted where the record showed that he "acted intentionally in declining to object on any grounds other than the government's alleged undue delay" and in response to the district court's queries "confirmed both times that he had no other objections"). The short of it is that a party cannot agree to one thing at trial and then later argue that what the party agreed to was a fundamental error that warrants yet a new trial.

Nor does Macon show that the limiting instruction was error at all. He now claims that the instruction should have warned the jury that it could not draw an adverse character inference but he does not cite any precedent that requires a Rule 404(b) limiting instruction to explicitly warn against an adverse character inference. As noted above, the instruction I gave warned the jury that they could consider the evidence "solely to decide if the prosecution has proved the charged crimes against Mr. Macon and Ms. Brooks" and that "you may not base your verdict on any belief that they engaged in any misconduct other than the specific charges at issue in this case." This type of charge-limiting instruction is appropriate. *See Williams*, 930 F.3d at 63 (noting that "the district court mitigated any potential prejudice by issuing a limiting instructions restricting the jury's use of the gang-affiliation evidence to proper Rule 404(b) grounds, telling the jury 'not [to] consider it for any other reason whatsoever'").

Macon further argues that the prosecutor improperly displayed the photographs of him holding uncharged firearms during the prosecutor's rebuttal closing argument.[61] But it was not improper for the prosecutor to show the jury photographs that had been admitted as full exhibits

---

[61] *Id.* at 8–9.

at trial. When one party shows the jury an exhibit that has been admitted at trial, it is frivolous for the opposing party to object that it is improper to show the exhibit to the jury.

Macon next argues that the prosecution delivered its "own, inadequate limiting instruction" while referencing the photographs during its rebuttal closing argument.[62] But having reviewed the transcript, I cannot discern any grounds to conclude that the prosecutor purported to issue a limiting instruction. Instead, the prosecutor correctly advised that "[t]he government is not alleging that he's guilty for possessing each of those other guns" shown in the photographs but "[o]nly the Smith & Wesson and the Taurus."[63] This was fully consistent with the limiting instruction to which all parties expressly agreed.

Macon also faults the prosecutor for arguing that the evidence of his handling of other firearms at Rehnberg's gun store tended to show that Macon "would be interested in firing the guns that he admitted to Special Agent Hyde that he fired."[64] But this was a fair argument for the prosecutor to make—to argue that by his conduct during the purchase of the Smith & Wesson firearm it was evident that Macon was no mere bystander but intended to possess and use the two firearms charged in the indictment.

In any event, even if Macon were correct that there was some error with respect to the admission of the still-shot photographs or the jury instructions or the prosecutor's closing argument, any such error was surely harmless. The evidence against Macon was crushingly overwhelming. He was caught on video holding the charged Smith & Wesson firearm multiple times. He later surrendered the Smith & Wesson and Taurus Judge firearms to the ATF and told

---

[62] *Ibid.*
[63] Tr. 721.
[64] *Id.* at 722.

the ATF case agent that he had possessed and fired them. Any error with respect to the photographs or evidence of uncharged firearms would not warrant the grant of a new trial.

*Testimony of Christopher Rehnberg*

Macon next argues that "[t]he Court erred in permitting a key witness, Last Redoubt owner Christopher Rehnberg, to provide his opinion on the ultimate issue of whether his sale of a firearm to Ms. Brooks was a straw purchase, and to provide an expert opinion on straw purchasing."[65] This argument, however, relies on a clear mischaracterization of Rehnberg's testimony.

Prior to Rehnberg's taking the witness stand, I granted the defense motion to bar the prosecution from eliciting opinion testimony from Rehnberg about straw purchases or from eliciting any "expert" opinion from Rehnberg about whether he believed Macon and Brooks engaged in a straw purchase transaction.[66] Rehnberg never offered an opinion while testifying that Macon and Brooks had engaged in a straw purchase transaction; to the contrary, he *denied* on cross-examination having an opinion that Macon and Brooks engaged in a straw purchase transaction.[67]

Moreover, Macon's counsel decided to elicit on cross-examination of Rehnberg the details of Rehnberg's out-of-court statement to law enforcement agents that Rehnberg thought the transaction was a straw purchase.[68] This out-of-court statement would never have been

---

[65] Doc. #230 at 11–12.

[66] Tr. 6–7 ("I'm going to grant the motion to the extent that I will bar the prosecution from eliciting an open-ended opinion from Mr. Rehnberg about whether he believed that the defendants were engaged in an unlawful transaction such as a straw purchase transaction. And I'm instructing the prosecution to meet with Mr. Rehnberg before he takes the witness stand to instruct him that he is to limit his testimony to the facts that he actually observed with respect to his interactions with the defendants and that he is not to volunteer his opinion about whether he believed the transaction was unlawful unless he's specifically asked to do that.").

[67] *Id.* at 178 ("Q. You don't even know if it's a straw purchase because you're basing that on what the agents told you? A. No, sir. I don't know if it still is or not.").

[68] *Id.* at 161 ("Do you remember telling the agents that you told Mr. Shrack to watch the live surveillance because you thought it was a straw purchase?").

before the jury but for this stunning decision by Macon's counsel to bring it out during cross-examination. The fact that Macon's own counsel tried to elicit Rehnberg's alleged opinion that the transaction was a straw purchase makes it nonsensical for Macon now to complain that he was prejudiced by any opinion testimony of Rehnberg about whether the transaction was a straw purchase.

To be sure, I allowed the prosecution to elicit from Rehnberg the fact that he called the ATF after the transaction occurred and that he did so because of his concern that the transaction *may* have been an unlawful straw purchase transaction.[69] It is common to allow a witness to a possible crime to testify that they contacted the police and why they did so. *See, e.g., United States v. Richards*, 204 F.3d 177, 197 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002); *McGee v. Warden of Lieber Corr. Inst.*, 2022 WL 5434349, at *25, *report and recommendation adopted*, 2022 WL 4591875 (D.S.C. 2022). This is classic *res gestae* evidence that bears upon the jury's evaluation of the witness's attentiveness and perception of the events as well as the witness's motives.

Indeed, had I precluded the prosecution from asking Rehnberg about the fact that he contacted the ATF and why he did so, no doubt the defendants would have jumped on the opportunity to argue to the jury that the transaction must have been wholly innocent because Rehnberg himself thought nothing was wrong and never bothered to contact the ATF to report a concern. As it was, Macon's cross-examination faulted Rehnberg for failing to contact the ATF even sooner than he did and before completing the sale.[70]

---

[69] *Id.* at 7–8 ("I will allow the prosecution to inquire of Mr. Rehnberg whether he contacted law enforcement about the defendants -- I assume the answer will be yes, but the question should be asked -- and also to state his reasons for doing so. And to me, that's important for general witness credibility in terms of explaining why he was paying attention, why he was observing, making the observations that he did, why they stuck out in his mind.").

[70] *Id.* at 251, 256.

In order to guard against any possible prejudice about why Rehnberg contacted the ATF, I issued a limiting instruction that his testimony was "offered for the limited purpose of understanding why the witness decided to contact law enforcement and that any legal opinion that the witness may have about the lawfulness of the transaction is entitled to no weight to you because you're here to decide that ultimate issue on the basis of the full record in the case."[71] Notwithstanding Macon's quibble that this limiting instruction was not issued at an earlier time during Rehnberg's testimony, I conclude that this limiting instruction cured any possible prejudice.

In any event, even if Macon were right that Rehnberg was improperly allowed to offer expert testimony about straw purchases, any error was obviously harmless for the reasons I have discussed above concerning the strength of evidence proving Macon's guilt. Moreover, both Macon and Brooks were *acquitted* on the false statement (straw purchase) charge. Having been acquitted on this charge, it makes no sense for Macon to argue that any expert opinion about straw purchases caused him prejudice. He makes no effort to explain how any expert opinion about straw purchase transactions possibly affected the jury's separate consideration of whether Macon unlawfully possessed a firearm. Accordingly, I conclude that Macon's challenge to Rehnberg's testimony does not warrant the grant of a new trial.

*Preclusion of testimony of case agent*

Macon next argues that the Court erred when it declined to preclude the ATF case agent—Special Agent Barrett Hyde—from testifying at trial. He argues that Agent Hyde should have been precluded from testifying as a sanction for the prosecution's failure to timely disclose certain evidence in compliance with the Court's standing order on pre-trial discovery.[72]

---

[71] *Id.* at 150.
[72] Doc. #230 at 18–22.

As an initial matter, there is no dispute—for the reasons discussed at length on the record at trial—that the government failed to timely disclose significant evidence and that this failure was attributable in part to the basic failure of Agent Hyde to conduct a thorough review of his files and to ensure that required materials were disclosed to the prosecutors.[73] Nor is there a dispute that I precluded the prosecution from introducing evidence that was not timely disclosed, including precluding the testimony and accompanying exhibits of a particular witness that depended on evidence not timely disclosed and for which the prosecution had also inexplicably failed to serve notice as required under Rule 404(b).[74]

On the other hand, I ruled that the failure to disclose evidence did not additionally warrant precluding Agent Hyde from testifying on the basis of his investigative actions that were *not* premised on evidence that he or the prosecution failed to timely disclose.[75] I ruled that Agent Hyde was not intentionally trying to subvert justice by negligently failing to disclose materials to the prosecutors and that it would be a disproportionate sanction to preclude him from testifying.[76]

Macon's motion for a new trial does not cite any precedent in which a court has sanctioned the prosecution's non-disclosure of evidence by means of an order categorically precluding a prosecution witness from testifying with respect to matters not germane to the materials that the prosecution failed to disclose. Instead, I chose to impose a sanction that was proportional to the evidence that the prosecution failed to timely disclose, and Macon does

---

[73] Doc. #201 (order re disclosure review); Doc. #222 at 61–74; Tr. 10–14.

[74] Doc. #203 (text order denying in part and granting in part motion for discovery sanctions); Tr. 43–44. I also ordered Agent Hyde's supervisor to come to court and to participate along with the prosecution in a further review of ATF files to ensure that no additional materials had not been disclosed. Tr. 50; Docs. #201, #204.

[75] It is true that Agent Hyde failed to timely disclose a single photograph that he took of the defendants' bedroom and that related to his testimony concerning his interactions with the defendants at their house. But this photograph was of little consequence to any material issue at trial, and the defendants received the photograph in plenty of time to use it for cross-examining Agent Hyde and other prosecution witnesses.

[76] Tr. 45.

nothing to call into question the principle that a court should only impose a sanction that is proportional to the wrong that has prompted the sanction. *See United States v. Stewart*, 513 F.2d 957, 960 (2d Cir. 1975) (dismissal of indictment not warranted due to government's failure to disclose evidence favorable to the defense because "[s]uch a sanction would be wholly disproportionate to any oversight on the part of the government, and contrary to the public interest").

Nor does Macon show that the premise for my ruling was wrong—for example, he does not show that Agent Hyde's failure to disclose evidence was intentional rather than negligent. To the contrary, Macon's counsel at trial said "I have a high regard for Agent Hyde" and that he is "always professional."[77] Accordingly, Macon fails to show that allowing Agent Hyde to testify amounted to a miscarriage of justice that would warrant the grant of a new trial.

*Sequestration of case agent*

Lastly, Macon argues that Agent Hyde should have been sequestered for the testimony of Rehnberg. Prior to trial I rejected Macon's motion to sequester Agent Hyde on the following grounds:

> Rule 615 of the Federal Rules of Evidence provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony," but that "this rule does not authorize excluding… an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(b). The Government has designated Agent Hyde as the party representative in this case, *see United States v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992), and Macon does not explain how his sequestration request is compatible with the plain language of the rule that appears not to authorize the Court to exclude a party's designated representative. The two cases cited by Macon are distinguishable because they involved a court's authority to sequester a *second* case agent, not the sole designated case agent as in this case. Even if Rule 615 is interpreted to confer discretion on the Court to exclude Agent Hyde from the courtroom,

---

[77] Tr. 29.

> the Court would not exclude Agent Hyde because Macon has not made a substantial showing of likely prejudice if Agent Hyde is permitted to be in the courtroom during the course of Rehnberg's testimony.[78]

Macon's motion for a new trial renews the same argument he made at trial but without even attempting to show how his position can be squared with the plain language of Rule 615 which categorically exempts a party's representative—such as the prosecution's designated case agent—from the scope of sequestration. It is yet another frivolous argument. Accordingly, Macon has failed to show that the non-sequestration of Agent Hyde warrants the grant of a new trial.

*Sufficiency of evidence*

Lastly, both Macon and Brooks move for a new trial on the ground that the evidence was not sufficient. But as I have discussed above, the evidence was easily sufficient to show that Macon was guilty of unlawfully possessing a firearm and that Brooks was guilty of aiding-and-abetting Macon's unlawful possession of a firearm. Accordingly, the defendants' challenges to the sufficiency of the evidence are not grounds for a new trial.

CONCLUSION

For the reasons set forth above, the Court DENIES the defendants' motions for judgements of acquittal and for a new trial (Docs. #207, #208, #210, #218, #227, #228, #229, #230).

It is so ordered.

Dated at New Haven this 20th day of June 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[78] Doc. #194 (docket order).